1  ROB BONTA
   Attorney General of California
2  JEFFREY T. FISHER
   Supervising Deputy Attorney General
3  BRIAN S. CHAN
   Deputy Attorney General
4  State Bar No. 299926
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone: (916) 210-7368
    Fax: (916) 324-5205
7   E-mail: Brian.Chan@doj.ca.gov
   *Attorneys for Defendants Allison, Diaz, Cryer,*
8  *Escobell, Borders, Broomfield, Bick, Davis, and*
   *Pachynski*
9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14  **DONTE LEE HARRIS,**                 Case No. 3:20-cv-09393 CRB

15                         Plaintiff,     **DEFENDANTS' NOTICE OF APPEAL**

16         **v.**                         Judge:        The Honorable Charles R. Breyer
                                          Action Filed:  December 29, 2020
17
    **KATHLEEN ALLISON, et al.,**
18
                          Defendants.
19

20

21      **TO THE COURT, PLAINTIFF, AND PLAINTIFFS' COUNSEL OF RECORD:**

22          PLEASE TAKE NOTICE THAT Defendants Allison, Diaz, Cryer, Escobell, Borders,

23  Broomfield, Bick, Davis, and Pachynski appeal to the Ninth Circuit Court of Appeals the order

24  entered May 18, 2022 (ECF No. 30), a copy of which is attached as Exhibit 1.

25          As required by Ninth Circuit Local Rule 3-2, Defendants' Representation Statement is

26  attached as Exhibit 2.

27  / / /

28  / / /

                                        1

1   Dated:  June 17, 2022                     Respectfully submitted,

2                                              ROB BONTA
                                               Attorney General of California
3                                              JEFFREY T. FISHER
                                               Supervising Deputy Attorney General
4
                                               */s/ Brian S. Chan*
5
                                               BRIAN S. CHAN
6                                              Deputy Attorney General
                                               *Attorneys for Defendants Allison, Diaz,*
7                                              *Cryer, Escobell, Borders, Broomfield, Bick,*
                                               *Davis, and Pachynski*
8

9   SF2021304530
    36259301.docx
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

DONTE LEE HARRIS,                          Case No.  20-cv-09393-CRB

9
Plaintiff,

10                                                  **ORDER PARTIALLY GRANTING
v.                                    AND PARTIALLY DENYING
11                                                  DEFENDANTS' MOTION TO
KATHLEEN ALLISON, et al.,               DISMISS**

12
Defendants.                            Dkt. No. 16

13

## I.    BACKGROUND

14          Plaintiff Donte Lee Harris, a California Department of Corrections and

15   Rehabilitation (CDCR) prisoner incarcerated at San Quentin State Prison (SQSP), filed a

16   pro se complaint in December 2020 pursuant to 42 U.S.C. § 1983.  He filed a First

17   Amendment Complaint (FAC) on April 9, 2021, alleging that defendants violated his

18   constitutional rights by transferring prisoners from the California Institution for Men

19   (CIM), which was experiencing a COVID-19 outbreak, to SQSP in May 2020 and causing

20   an outbreak at the latter, during which he contracted the disease.  See generally Dkt. No. 9.

21   The Court ordered the FAC served on Defendant federal receiver Clark Kelso and CDCR

22   Defendants Kathleen Allison, Ralph Diaz, Ron Davis, Ron Broomfield, Dr. A. Pachynski,

23   Dr. L. Escobell, Dr. R. Steven Tharratt, [1] Clarence Cryer, Dean Borders, and Dr. Joseph

24   Bick.  Dkt. No. 11.

25          The CDCR Defendants filed a motion to dismiss plaintiff's FAC on November 9,

26   2021.  Dkt. 16.  Plaintiff did not file an opposition.  Plaintiff became represented by

27   ───────────────

28   [1] The Court subsequently dismissed defendant Tharratt, who was deceased prior to the
filing of suit.  Dkt. No. 24.

counsel on May 3, 2022.  Dkt. No. 29.

Plaintiff's FAC alleges that Defendants were involved in the decision to transfer over 100 inmates, some of whom were infected with COVID-19, from CIM to SQSP in May 2020.  Dkt. No. 9 at 9.  He alleges that Defendants failed to take adequate safety precautions before, during, and after the transfer, including failing to test the transferring prisoners or screen them for symptoms at the appropriate times, failing to implement distancing measures on the transfer busses, and failing to test and isolate the transferred prisoners upon arrival.  Id. at 9-14.  Because of the transfer and manner in which it occurred, Plaintiff alleges an outbreak resulted at SQSP, during which Plaintiff tested positive for COVID-19 on June 29, 2020.  Id. at 14.

Plaintiff alleges that named Defendants were deliberately indifferent to the risk to his health of transferring the prisoners from CIM and failing to quarantine them.  Id. at 16-17.  He alleges that Defendants Diaz, Allison, and Davis approved of the transfer; that Defendant Bick was "responsible for all transfer and testing protoc[o]ls"; that Defendant Escobell failed to ensure that prisoners were tested before the transfer; that Defendant Borders was also aware that prisoners had not been tested and approved of transferring them without adequate testing; and that SQSP defendants Broomfield, Cryer, and Pachynski failed to isolate the transferred prisoners and "chose not to implement . . . basic safety measures."  Id. at 9-13.  He also alleges that Defendant Davis, with the approval of Defendants Diaz, Allison, and Bick, failed to socially distance the transferring prisoners by placing more than 19 prisoners on each bus.  Id. at 12.  He also alleges that Defendants Diaz and Allison failed to reduce the prison population, exacerbating the impact of the outbreak.  Id. at 16.  Plaintiff seeks declaratory relief, injunctive relief, compensatory and punitive damages, and costs.  Id. at 17-18.

Because Defendants are not entitled to qualified immunity or immunity under the PREP Act at this stage of the case, and because Plaintiff has adequately pleaded his claim for violation of the Eighth Amendment, the motion to dismiss Plaintiff's FAC will be denied as to Plaintiff's federal constitutional claims.  Because the California constitution

1    does not provide a private right of action for damages for violations of the cruel and

2    unusual punishment clause, Plaintiff's state-law claim will be dismissed.

3    **II.    LEGAL STANDARD**

4         Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

5    which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) applies when a

6    complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such

7    a theory.  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).

8    Whether a complaint contains sufficient factual allegations depends on whether it pleads

9    enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556

10   U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

11   A claim is plausible "when the plaintiff pleads factual content that allows the court to draw

12   the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at

13   678.  When evaluating a motion to dismiss, the Court "must presume all factual allegations

14   of the complaint to be true and draw all reasonable inferences in favor of the nonmoving

15   party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "[C]ourts must

16   consider the complaint in its entirety, as well as other sources courts ordinarily examine

17   when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated

18   into the complaint by reference, and matters of which a court may take judicial notice."

19   Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

20         If a court dismisses a complaint for failure to state a claim, it should "freely give

21   leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has

22   discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the

23   part of the movant, repeated failure to cure deficiencies by amendment previously allowed,

24   undue prejudice to the opposing party by virtue of allowance of the amendment, [and]

25   futility of amendment."  Leadsinger, Inc. v. BMG Music Pub., 512 F.3d 522, 532 (9th Cir.

26   2008).

27

28

United States District Court
Northern District of California

3

## III.   DISCUSSION

### A.   Judicial Notice and Incorporation

There are two exceptions to the rule that a court must consider only the complaint, on its face, when deciding a motion to dismiss: a court may also consider material that is incorporated into the complaint and material that is judicially noticeable.  Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).  Plaintiff attaches and incorporates by reference the February 2021 California Office of the Inspector General (OIG) report regarding the transfer of prisoners from CIM to SQSP.  See Dkt. No. 9 at 8, Dkt. No. 9-1 at 29.

Defendants ask that the following documents also be incorporated by reference: July 1, 2020, testimony of Federal Receiver Clark Kelso before the California State Senate's Public Safety Committee Hearing (RJN Ex E); the California Governor's March 4, 2020 Executive Order (RJN Ex F); the California Governor's March 24, 2020 Executive Order N-36-20 (RJN Ex G); and a news article regarding the Centers for Disease Control and Prevention's (CDC's) guidance on aerosol spread of coronavirus (RJN Ex H).  These documents are not incorporated by reference because plaintiff did not attach them or rely on them extensively, nor did they "form the basis" of any of his claims.  See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018).

Defendants request that the Court take judicial notice of the following: four joint case management statements from Plata v. Newsom, Case No. 01-CV-01351-JST (N.D. Cal.), a longstanding case overseeing CDCR's provision of healthcare, RJN (Dkt. No. 16-2) Ex A-D.  Courts may judicially notice an adjudicative fact that is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  But "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth," and "a court cannot take judicial notice of disputed facts contained in [matters of] public record[]."  Khoja, 899 F.3d at 999.  Thus, a court must consider what facts are being

4

proposed—i.e., "the purpose for which [the document is] offered." Id. at 1000.

The Plata case management statements are not appropriate for judicial notice. Defendants appear to want this Court to take as true factual representations made within them to draw related inferences, but the Court cannot do so because they go to the heart of the Plaintiff's allegations. Khoja, 899 F.3d at 999.

The Court does take judicial notice of two advisory opinions by the Department of Health and Human Services (HHS) relating to the Public Readiness and Emergency Preparedness (PREP) Act: Advisory Opinion 20-03 on the Public Readiness and Emergency Preparedness Act and the Secretary's Declaration under the Act October 22, 2020, as Modified on October 23, 2020;[2] and Advisory Opinion 21-01 on the Public Readiness and Emergency Preparedness Act Scope of Preemption Provision, January 8, 2021.[3]  These are government documents in the public record, the authenticity of which are not in dispute.  See Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

## B.    Failure to State a Claim

Defendants argue that Plaintiff has failed to state a deliberate indifference claim because his FAC "contains only conclusory allegations of causation."  Dkt. No. 16-1 at 12. Plaintiff's allegations regarding each Defendant's decisions regarding the transfer and the transfer protocols, or knowledge of the flawed protocols and failure to take actions to mitigate the risk they presented, identify acts or omissions by each Defendant that, if proven true, could constitute conscious disregard for his health.  Plaintiff need not allege facts demonstrating that Defendants were aware of the risk to him specifically; it is enough that Plaintiff alleges Defendants were aware of the risk to all San Quentin prisoners.  See, e.g., Parsons, 754 F.3d at 678 ("courts . . . have recognized that many inmates can simultaneously be endangered by a single policy"); Graves v. Arpaio, 623 F.3d 1043, 1050

---

[2] Published at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/AO3.1.2_Updated_FINAL_SIGNED_10.23.20_0.pdf.

[3] Published at https://www.hhs.gov/guidance/sites/default/files/hhs-guidance-documents/2101081078-jo-advisory-opinion-prep-act-complete-preemption-01-08-2021-final-hhs-web.pdf.

1  (9th Cir. 2010) (defendant violated constitutional rights of jail detainees housed in high

2  temperature locations and taking psychotropic medications impacting the body's ability to

3  regulate heat, even though defendant was not specifically aware of which detainees were

4  taking those medications).

5          Defendants argue that Plaintiff's identification of Defendant Borders as the warden

6  of CIM and "speculation" that Borders approved of the transfer fails to constitute a

7  plausible claim. Dkt. No. 16-1 at 13. The Court disagrees. Plaintiff specifically alleges

8  that "[o]ne manager integral to the transfer process alerted CIM Warden Dean Borders of

9  the need to discuss challenges in preparing for the transfers," and that Borders, among

10  others, made a "conscious decision" to continue with the transfer despite knowledge of

11  outdated test results. Dkt. No. 9 at 10-11. It is plausible, given Borders's role as warden

12  and the OIG Report's description of the way the transfer decision and process unfolded,

13  that Defendant Borders was aware of the risks and took no action to mitigate them. See,

14  e.g., Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) (complaint adequately pleaded

15  deliberate indifference by county sheriff towards jail violence by alleging that he "was

16  given notice . . . of systematic problems in the county jails under his supervision that . . .

17  resulted in . . . deaths and injuries" and he "did not take action to protect inmates under his

18  care despite the dangers, created by the actions of his subordinates, of which he had been

19  made aware").

20          Defendants also argue that there were intervening causes that break the chain of

21  causation as to some of Plaintiff's claims. Dkt. No. 16-1 at 13. "[T]raditional tort law

22  principles of causation" apply to section 1983 claims, see Galen v. Cty. of Los Angeles,

23  477 F.3d 652, 663 (9th Cir. 2007), including that intervening causes may supersede prior

24  causes and subsume partial or total liability. See Restatement (Second) of Torts § 441

25  (1965). Here, Plaintiff has adequately alleged causation of his COVID infection by all the

26  named Defendants. Determining the truth of the allegations as to each Defendant's

27  conduct and whether it contributed to or caused the conditions that resulted in Plaintiff's

28  infection is a matter for discovery and perhaps ultimately trial. Factual questions as to

1   causation preclude granting the motion to dismiss.  See, e.g., Beck v. City of Upland, 527

2   F.3d 853, 870 (9th Cir. 2008) (summary judgment not appropriate where a rational jury

3   could determine that the prosecutor's conduct in filing charges was not an independent

4   intervening cause to shield police officers from liability for false arrest).

5       Defendants claim that "there are no factual allegations showing Plaintiff was ever

6   housed or came into contact with any CIM inmates while he was at San Quentin," and

7   therefore "there are no alleged facts connecting any of these Defendants' actions or

8   inactions with Plaintiff's contracting COVID-19."  Dkt. No. 16-1 at 14.  The FAC alleges

9   that transferees tested positive after having been "housed in the unit for at least six days,"

10  rather than in any sort of quarantine, after which "[t]he virus then spread quickly through

11  the housing units and to multiple areas of the prison," due to "[t]he prison's inability to

12  properly quarantine and isolate [inmates] exposed to or infected with COVID-19" and "the

13  practice of allowing staff to work throughout the prison during shifts or on different days."

14  Dkt. No. 9 at 13-14.  Plaintiff alleges this "likely caused the virus to spread to multiple

15  areas of the prison."  Id. at 14.   Plaintiff need not specifically allege that he came into

16  contact with transferred prisoners from CIM.  Plaintiff plausibly alleges that the transfer

17  caused an outbreak throughout the entire prison, during which he became infected.  See id.

18  Plaintiff has adequately alleged causation connecting Defendants' actions or inaction to his

19  contracting the virus.

20      Defendants also argue that Plaintiff does not adequately plead the knowledge of

21  each supervisory Defendant.  Dkt. No. 16-1 at 14.  Again, the Court disagrees.  Plaintiff

22  has adequately pleaded, at the motion to dismiss stage, that Defendants in supervisory

23  roles were aware of the risks involved in the transfer.  The OIG report bolsters this claim

24  by documenting communications involving institution medical executives and CCHCS

25  medical executives demonstrating their knowledge of and involvement in the details of

26  transfer, although it does not identify CDCR participants by name.  See, e.g., Dkt. No. 9-1

27  at 35, Dkt. 9-2 at 7.  Defendants' argument as to supervisory Defendants' knowledge or

28  lack thereof is better suited to a later stage of this case.

### C.   Plaintiff's Claim Under Article I, Section 17 of the California Constitution

The California Court of Appeal has held that "[t]here [i]s [n]o [p]rivate [r]ight [o]f [a]ction [f]or [d]amages [a]rising [o]ut [o]f [a]n [a]lleged [v]iolation [o]f [t]he [c]ruel [o]r [u]nusual [p]unishment [c]lause [o]f [t]he California Constitution." *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 253 (2008).  Plaintiff's claim under the California constitution's cruel or unusual punishment clause will therefore be dismissed.  See Asberry v. Relevante, No. 116CV01741LJOJDP, 2018 WL 4191863, at *7 (E.D. Cal. Aug. 31, 2018), report and recommendation adopted, No. 116CV01741LJOJDPPC, 2018 WL 4616383 (E.D. Cal. Sept. 24, 2018) (plaintiff could not proceed with damages claim under Article I, section 17);  McDaniel v. Diaz, No. 120CV00856NONESAB, 2021 WL 147125, at *20 (E.D. Cal. Jan. 15, 2021), report and recommendation adopted, No. 120CV00856NONESAB, 2021 WL 806346 (E.D. Cal. Mar. 3, 2021) (dismissing plaintiff's section 17 claim).

### D.   Qualified Immunity

Defendants claim that they have qualified immunity from Plaintiff's lawsuit. This argument fails.

"Qualified immunity protects government officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hernandez v. City of San Jose, 897 F.3d 1125, 1132 (9th Cir. 2018) (quotation and citation omitted).  "To determine whether an officer is entitled to qualified immunity, [courts] ask, in the order [they] choose, (1) whether the alleged misconduct violated a right and (2) whether the right was clearly established at the time of the alleged misconduct." Maxwell v. Cty. of San Diego, 708 F.3d 1075, 1082 (9th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).

If there was a violation, the "salient question" is whether the law at the time gave the defendants "fair warning" that their conduct was unconstitutional.  Tolan v. Cotton, 572 U.S. 650, 656 (2014).  Courts should not define clearly established law "at a high level

1   of generality." <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018) (citation omitted).  On the

2   other hand, "a general constitutional rule already identified in the decisional law may apply

3   with obvious clarity to the specific conduct in question." <u>Taylor v. Riojas</u>, 141 S. Ct. 52,

4   53-54 (2020) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002)); accord <u>White v. Pauly</u>,

5   137 S. Ct. 548, 551 (2017).

6         Here, Plaintiff has plausibly alleged that the conduct described in the complaint

7   violated his constitutional rights.  Deliberate indifference to a prisoner's serious medical

8   needs violates the Eighth Amendment's proscription against cruel and unusual

9   punishment.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  A prison official is deliberately

10  indifferent if he knows that a prisoner faces a substantial risk of serious harm and

11  disregards that risk by failing to take reasonable steps to abate it.  <u>Farmer v. Brennan</u>, 511

12  U.S. 825, 837 (1994) (equating the standard with that of criminal recklessness).  The

13  prison official must not only "be aware of facts from which the inference could be drawn

14  that a substantial risk of serious harm exists," but "must also draw the inference." <u>Id.</u>

15  Consequently, in order for deliberate indifference to be established, there must exist both a

16  purposeful act or failure to act on the part of the defendant and harm resulting therefrom.

17  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds,

18  <u>WMX Technologies, Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

19        "A defendant may be held liable as a supervisor under § 1983 if there exists either

20  (1) [the supervisor's] personal involvement in the constitutional deprivation, or (2) a

21  sufficient causal connection between the supervisor's wrongful conduct and the

22  constitutional violation." <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up);

23  <u>see Cunningham v. Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000) (supervisors can be liable

24  for "1) their own culpable action or inaction in the training, supervision, or control of

25  subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint

26  is made; or 3) for conduct that showed a reckless or callous indifference to the rights of

27  others").

28        Plaintiff has plausibly alleged that each Defendant participated, as supervisor or

9

1    otherwise, in one or more of the decisions to transfer prisoners, regarding the process for

2    transferring prisoners, and regarding the housing of prisoners after the transfer, in a

3    manner that exposed him to heightened risk of contracting COVID-19.  These alleged

4    actions are sufficient to constitute unconstitutional conduct.  See Helling v. McKinney,

5    509 U.S. 25, 33, 34 (1993) ("the exposure of inmates to a serious, communicable disease,"

6    including by the "mingling of inmates with serious contagious diseases with other prison

7    inmates," violates the Eighth Amendment).  The plausibility of Plaintiff's claim that

8    Defendants were deliberately indifferent to the risk of exposure associated with the

9    transfer, the transfer protocol, and the containment strategy or lack thereof upon receiving

10   the prisoners at San Quentin, is bolstered by the allegations contained in the incorporated

11   OIG report.  The report noted:

> Our review found that the department's efforts to prepare for and
> execute the transfers of 67 medically vulnerable incarcerated
> persons to Corcoran and 122 to San Quentin were deeply flawed
> and risked the health and lives of the medically vulnerable
> incarcerated persons whom the department was attempting to
> protect . . . .  In an effort to remove the medically vulnerable
> incarcerated persons from the prison's outbreak, CCHCS and
> departmental executives locked themselves into a tight deadline
> for beginning the transfers by the end of May 2020 . . . .  Faced
> with this self-imposed deadline, CCHCS executives and
> management at the department's headquarters pressured staff at
> the California Institution for Men to take whatever action was
> necessary to execute the transfers within this time frame.
>
> The deadline and resulting pressure from executives to meet the
> deadline created apprehension among prison staff, causing some
> to question the safety of the transfers. Numerous email messages
> the OIG reviewed illustrate these concerns.
> . . .
> The insistence on beginning the transfers by the end of May
> 2020 resulted in the California Institution for Men transferring
> medically vulnerable incarcerated persons despite knowing that
> weeks had passed since many of them had been tested for
> COVID-19 . . . .
>
> The decision to transfer the medically vulnerable incarcerated
> persons despite such outdated test results was not simply an
> oversight; instead, it was a conscious decision made by prison
> and CCHCS executives.

Dkt. No. 9-1 at 33-34.

The report also found that SQSP had inadequate infrastructure for controlling the

spread of the virus: "Given the clearly antiquated design of San Quentin's housing units as well as the prisons' history [of influenza outbreaks], the decision by CCHCS and the department to transfer 122 medically vulnerable incarcerated persons to San Quentin is especially puzzling." Id. at 26. It also found that "San Quentin took inadequate precautions to limit the spread of COVID-19 throughout the prison" by failing to limit the movement of staff and enforce masking. Id. at 28-29.

Further, the law at the time of the events of which Plaintiff complains gave Defendants fair warning that the alleged conduct, exposing Plaintiff to greater risk of contracting a communicable disease, was unconstitutional. See Helling, 509 U.S. at 35 (exposure to inhalants that pose an "unreasonable risk of serious damage to [a prisoner's] future health" was an Eighth Amendment violation when done with deliberate indifference); Hutto v. Finney, 437 U.S. 678, 682 (1978) ("jumbl[ing] together" of mattresses used by prisoners with infectious diseases with other prisoners contributed to Eighth Amendment violating punitive isolation conditions); Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014) ("Since Helling and Farmer, we have repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm"); Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007) (prisoner stated Eighth Amendment claim based on failure to screen for infectious diseases or isolate those with infections).

Defendants' claim of qualified immunity relies on too narrow a definition of the clearly established right at issue. Though a court must not define a right at a high level of generality, see Kisela, 138 S. Ct. at 1152, an official's "legal duty need not be litigated and then established disease by disease or injury by injury," Est. of Clark v. Walker, 865 F.3d 544, 553 (7th Cir. 2017); Maney v. Brown, 2020 WL 7364977, at *6 (D. Or. Dec. 15, 2020) (denying qualified immunity to prison officials because inmates had "a clearly established constitutional right to protection from a heightened exposure to COVID-19, despite the novelty of the virus"). At the motion to dismiss stage the Court cannot agree that Defendants were not on notice that their conduct might violate the Constitution.

Nor is qualified immunity appropriate at this stage based on Defendants' claim that their "CDCR followed the Receiver's orders." Dkt. 16-1 at 17. That the receiver ordered the transfer does not on its own shield Defendants from liability. What the Receiver directed Defendants to do is a fact-specific inquiry and the Court cannot determine at this time whether Defendants are entitled to immunity on that basis.[4] For example, the OIG Report notes that "the federal receiver and a CCHCS director intended to proceed with the transfers of incarcerated persons between prisons by the end of May 2020." Dkt. 9-1 at 37. The report documents "communications among prison and CCHCS staff," most of them unnamed, about concerns about the transfer, but notes that "departmental management and CCHCS executives" decided to proceed anyway. Dkt. No. 9-2 at 1, 4. The report notes that a CCHCS director told CIM officials that testing should be done within 4-6 days of the transfer, but CCHCS did not leave CIM enough time to adequately conduct such testing. Dkt. No. 9-1 at 34, see Dkt. No. 9 at 10. The report concludes that "[f]ailures by the prison to conduct timely testing of the transferring incarcerated persons was . . . an overt decision made by the California Institution for Men's top health care executive." Dkt. No. 9-2 at 6. It is not clear from the allegations in the FAC and incorporated report exactly what the receiver directed, what decisions were made by other headquarters staff independent of the receiver's directions, and what decisions were made by institution staff. Defendants' note, for example, that "the Receiver's guidance did not mandate how far in advance of a transfer an inmate needed to be tested," suggesting that a different Defendant may have been responsible for that decision. Dkt. No. 16-1 at 10.

Hines v. Youseff, 914 F.3d 1218 (9th Cir. 2019), does not compel a different result. There, the Ninth Circuit upheld a finding of qualified immunity for CDCR officials at the

---

[4] Disputed facts necessary for determining qualified immunity preclude such a finding at a motion to dismiss or motion for summary judgment stage. See, e.g., Est. of Adams, 133 F.3d 926 (9th Cir. 1998); Atencio v. Arpaio, 674 F. App'x 623, 625 (9th Cir. 2016). See also Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017) ("'whether a constitutional right was violated ... is a question of fact' for the jury, while 'whether the right was clearly established ... is a question of law' for the judge") (quoting Tortu v. Las Vegas Metro. Police Dep't, 556 F.3d 1075, 1085 (9th Cir. 2009).

1   summary judgment stage from claims of exposing plaintiffs to Valley Fever.  The court

2   found it "especially significant that state officials could have reasonably believed that they

3   were not violating the inmates' Eighth Amendment rights because the officials reported to

4   the federal Receiver." Id. at 1231.  Here, in contrast, the Court lacks adequate information

5   at this stage to determine whether state officials made decisions independent from the

6   instructions of the receiver that failed to meet a constitutional level of care.

7        Further, the Hines court noted that millions of people choose to live in the Central

8   Valley despite the risk of Valley Fever exposure, and that "there is no evidence in the

9   record that 'society's attitude had evolved to the point that involuntary exposure' to either

10  the heightened risk inside prison or the lower risk outside prison 'violated current

11  standards of decency'." Id. at 1232.  Here, in contrast, the "standards of decency"

12  regarding COVID-19 exposure in May 2020 is a matter requiring further factual

13  development.  At first glance, the seriousness of COVID-19 and the national and global

14  response to the pandemic by April and May of 2020 suggest a very different picture from

15  what was in front of the Hines court.

16       Neither does Rico v. Ducart, 980 F.3d 1292, 1299 (9th Cir. 2020), also cited by

17  Defendants, confer immunity on Defendants.  In Rico, the Ninth Circuit found that

18  correctional officers had qualified immunity from a claim that they violated prisoners'

19  constitutional rights by making excessive noise and depriving them of sleep while carrying

20  out welfare checks ordered as part of the ongoing Coleman v. Newsom class action.  The

21  existence of the court order directing the checks was not dispositive; rather, the court

22  looked to precedent regarding whether it was clearly established that excessive noise was

23  unconstitutional.  Here, as previously discussed, the precedent does clearly establish that

24  exposure to an infectious disease is unconstitutional.

25       This Court's finding that Defendants are not presently entitled to qualified

26  immunity is consistent with decisions by other district courts within the Ninth Circuit.

27  See, e.g., Hampton v. California, No. 21-CV-03058-LB, 2022 WL 838122, at *8 (N.D.

28  Cal. Mar. 20, 2022) (disputed facts preclude qualified immunity for claims arising from the

13

May 2020 transfer of prisoners from CIM to SQSP); Maney, 2020 WL 7364977; Jones v. Sherman, No. 121CV01093DADEPGPC, 2022 WL 783452, at *10 (E.D. Cal. Mar. 11, 2022) ("the law is clearly established that individuals in government custody have a constitutional right to be protected against a heightened exposure to serious, easily communicable diseases, and the Court finds that this clearly established right extends to protection from COVID-19"); Jones v. Pollard, No. 21-CV-162-MMA (RBM), 2022 WL 706926, at *9-10 (S.D. Cal. Mar. 9, 2022) (denying qualified immunity at the motion to dismiss stage and noting "[t]he issue of whether Defendant's decision was made under the supervision of the federal Receiver, and if so, whether that supervision impacts the reasonableness of the belief that the conduct was lawful thus triggering qualified immunity should be more appropriately addressed at a later stage").[5]

### E.    The PREP Act

Defendants also argue that the PREP Act confers immunity to all of Plaintiff's claims.  This argument fails.

The PREP Act provides immunity for injuries "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the HHS Secretary] has been issued with respect to such countermeasure."  42 U.S.C. § 247d-6d(a)(1).  Under the statute, covered countermeasures include "qualified pandemic . . . product[s]" and "respiratory protective device[s] . . . that the Secretary determines to be a priority for use."  42 U.S.C. § 247d-

---

[5] The out-of-circuit authority Defendant cites simply holds that a correctional institution's failure to achieve social distancing, and failure to prevent the spread of COVID, does not amount to recklessness where the institution took "numerous measures to combat the virus."  Swain v. Junior, 961 F.3d 1276, 1287 (11th Cir. 2020).  See also Wilson v. Williams, 961 F.3d 829, 841 (6th Cir. 2020) (Bureau of Prisons officials generally "responded reasonably to the risk posed by COVID-19" even though the virus spread). Here, Plaintiff has not claimed that Defendants simply failed to prevent the spread of the virus or achieve measures not possible in a correctional setting, but that Defendants actively and knowingly made specific affirmative decisions that created greater risk that he would contract COVID.

14

1  6d(i)(1)(A), (C), (D).

2        The Secretary issued a declaration in light of COVID-19.  Declaration Under the

3  Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against

4  COVID-19, 85 Fed. Reg. 15,198, 15,198 (Mar. 17, 2020) ("Declaration").  It has been

5  amended several times during the pandemic.  A "covered countermeasure" may include

6  "any antiviral, any other drug, any biologic, any diagnostic, any other device, any

7  respiratory protective device, or any vaccine, used . . . to treat, diagnose, cure, prevent,

8  mitigate or limit the harm from COVID-19."  Fourth Amendment to the Declaration, 85

9  Fed. Reg. 79,190, 79,196 (Dec. 9, 2020).  The Secretary has also declared that failure to

10 institute a covered countermeasure may sometimes give rise to immunity:

11            Where there are limited Covered Countermeasures, not
             administering a Covered Countermeasure to one individual in
12           order to administer it to another individual can constitute
             "relating to . . . the administration to . . . an individual" under 42
13           U.S.C. 247d-6d. For example, consider a situation where there
             is only one dose of a COVID-19 vaccine, and a person in a
14           vulnerable population and a person in a less vulnerable
             population both request it from a healthcare professional. In that
15           situation, the healthcare professional administers the one dose to
             the person who is more vulnerable to COVID-19. In that
16           circumstance, the failure to administer the COVID-19 vaccine
             to the person in a less vulnerable population "relat[es] to . . . the
17           administration to" the person in a vulnerable population. The
             person in the vulnerable population was able to receive the
18           vaccine only because it was not administered to the person in the
             less-vulnerable population.
19

20 Id. at 79,197.  The January 8, 2021 HHS Advisory Opinion differentiates between

21 "allocation which results in non-use by some individuals," which allows for immunity, and

22 "nonfeasance . . . that also results in non-use," which does not.  Advisory Opinion 21-01 at

23 4.  Thus, courts have concluded that immunity for "inaction claims" only lies

24 when the defendant's failure to administer a covered countermeasure to one individual has

25 "a close causal relationship" to the administration of that covered countermeasure to

26 another individual.  Lyons v. Cucumber Holdings, LLC, 520 F. Supp. 3d 1277, 1285–86

27 (C.D. Cal. 2021) (citation omitted).

28        Plaintiff alleges that Defendants put him at increased risk of contracting COVID by

15

transferring prisoners from CIM to San Quentin, failing to implement appropriate testing and distancing before and during the transfer, and failing to implement appropriate quarantine measures after the transfer.  The transfer of prisoners is not a covered countermeasure under the PREP Act.  While the failure to test could be considered a failure to administer a covered countermeasure, the facts as alleged bear no indication that the failure to test the transferring prisoners had any relationship to the testing of other prisoners.  The allegations are of non-use resulting from non-feasance rather than allocations.  Defendants do not even suggest that the reliance on old COVID tests was the result of a limited number of tests and a choice to use the tests on a different population.  To the extent Plaintiff claims that mask distribution contributed to his contracting COVID, Defendants could ultimately demonstrate entitlement to PREP Act immunity for decisions on how to allocate limited masks.  But Plaintiff's lone allegation about mask usage in the FAC, that Defendants Broomfield, Cryer, and Pachynski failed to provide personal protective equipment until late April 2020, see Dkt. No. 9 at 8, has no real bearing on his constitutional claims regarding the prisoner transfer that took place in May 2020.  The OIG Report makes minimal references to mask usage, and at most it would only constitute one part of the story of the transfer and the resulting outbreak.  The mere mention of countermeasures in the complaint does not confer immunity.  See Rachelle Crupi, v. The Heights of Summerlin, LLC, et al., No. 221CV00954GMNDJA, 2022 WL 489857, at *6 (D. Nev. Feb. 17, 2022) ("the fact that the Complaint mentions some covered countermeasures as examples of Defendants' failure to enact a COVID-19 response policy, does not rise to the level of alleging that [decedent]'s death was specifically caused by Defendants' use (or misuse) of covered countermeasures") The Court therefore cannot conclude that any of the Defendants have immunity under the PREP Act.

Defendants argue that the challenged conduct in this case involves the "management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures."  Declaration, 85

Fed. Reg. at 15202.[6]  But prisons are not countermeasure programs, nor are they locations for the purpose of distributing countermeasures.  While the Act may confer immunity for the administration of countermeasures within a prison context, it does not serve to convert all prison operations into countermeasure programs or locations such that any COVID-related conduct or decisions made within that context are immune.

The Court's finding that Defendants are not entitled to immunity under the PREP Act is consistent with decisions by other district courts within the Ninth Circuit.  See Smith v. Colonial Care Ctr., Inc., No. 2:21-CV-00494-RGK-PD, 2021 WL 1087284, at *4 (C.D. Cal. Mar. 19, 2021), appeal filed, No. 21-55377 (9th Cir. Apr. 19, 2021) ("failure to 'implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting [nursing home] residents from exposure to COVID-19[]'" not covered by the PREP Act); Hampton, 2022 WL 838122, at *10-11.

Because the PREP Act does not apply, the Court need not reach Defendants' argument that this Court lacks jurisdiction to reach claims involving "[t]he sole exception to the PREP Act's broad immunity."  Dkt. No. 43-1 at 18.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is GRANTED with respect to the claim under the California Constitution, Article I, section 17, and DENIED in all other regards.

---

[6] The Declaration further provides:

> [T]he Act precludes a liability claim relating to the management and operation of a countermeasure distribution program or site, such as a slip-and-fall injury or vehicle collision by a recipient receiving a countermeasure at a retail store serving as an administration or dispensing location that alleges, for example, lax security or chaotic crowd control. However, a liability claim alleging an injury occurring at the site that was not directly related to the countermeasure activities is not covered, such as a slip and fall with no direct connection to the countermeasure's administration or use. In each case, whether immunity is applicable will depend on the particular facts and circumstances.

Declaration, 85 Fed. Reg. at 15200.

17

This Order terminates Docket No. 16.

**IT IS SO ORDERED.**

Dated: May 18, 2022



_____
CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

# EXHIBIT 2

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**DONTE LEE HARRIS,**

                                        Plaintiff,

     **v.**

**KATHLEEN ALLISON, et al.,**

                                        Defendants.

---

On Appeal from the United States District Court
for the Northern District of California

No. 3:20-cv-09393 CRB
The Honorable Charles R. Breyer, District Judge

### REPRESENTATION STATEMENT

ROB BONTA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JEFFREY T. FISHER
Supervising Deputy Attorney General
BRIAN S. CHAN
Deputy Attorney General
State Bar No. 299926
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7368
  Fax: (916) 324-5205
  Email:  Brian.Chan@doj.ca.gov
*Attorneys for Defendants-Appellants*

The undersigned represent Defendants-Appellants K. Allison, R. Diaz, C. Cryer, L. Escobell, D. Borders, R. Broomfield, J. Bick, R. Davis, and A. Pachynski and in this appeal.

Below is a service list for the counsel who represent the Plaintiff-Appellee Donte Lee Harris in this matter:

> STANLEY R. APPS (Bar No. 309425)
> Email: stan.apps@gmail.com, stan@appsatlaw.com, stanley.a@gitmeidlaw.com
> LAW OFFICE OF STANLEY R. APPS
> 4424 Bellingham Avenue
> Studio City, CA 91604
> Tel: (310)709-3966

Dated:  June 17, 2022                Respectfully submitted,

ROB BONTA
Attorney General of California
MONICA N. ANDERSON
Senior Assistant Attorney General
JEFFREY T. FISHER
Supervising Deputy Attorney General

*s/ Brian S. Chan*

BRIAN S. CHAN
Deputy Attorney General
*Attorneys for Defendants-Appellants*
*K. Allison, R. Diaz, C. Cryer, L. Escobell,*
*D. Borders, R. Broomfield, J. Bick,*
*R. Davis, and A. Pachynski*

SF2021304530
36259359.docx

# CERTIFICATE OF SERVICE

Case Name:   **Donte Lee Harris (V58307)**          No.     **3:20-cv-09393 CRB**
               **v. Allison, et al.**

I hereby certify that on June 17, 2022, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **DEFENDANTS' NOTICE OF APPEAL**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on June 17, 2022, at Sacramento, California.

|  M. Garcia  |  */s/ M. Garcia*  |
| :---: | :---: |
| Declarant | Signature |

SF2021304530
36262279.docx